# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED FOR MISSOURI, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 4:17-CV-2405 CAS |
| v. ) | |
| ) | |
| ST. CHARLES COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This is an action for declaratory judgment and permanent injunctive relief concerning the St. Charles County Narcotics Control Act (the "Act"), a county ordinance. The case was originally filed in the Circuit Court of St. Charles County, Missouri. The defendants removed the case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441, as Count I of plaintiffs' complaint seeks a declaratory judgment that the Act is in violation of the Fourth Amendment to the United States Constitution. Doc. 1 at 2. Defendants' Notice of Removal does not address plaintiffs' state law claims in Counts II and III, but the Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

The case is before the Court on plaintiffs United for Missouri, Dan Rakers, John Doe, and Carl Bearden's (collectively "plaintiffs") Motion to Remand Counts II and III and Stay Count I of the First Amended Complaint. Defendants St. Charles County and Hope Woodson, Director of the St. Charles County Department of Public Health, in her official capacity (collectively "defendants") oppose the motion to remand and stay, and it is fully briefed. For the following reasons, plaintiffs' motion will be granted. The Court will decline to exercise supplemental jurisdiction over the state law claims in Counts II and III pursuant to the abstention doctrine established in Railroad

Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), and will remand those claims to state court for decision. The Court will stay plaintiffs' federal constitutional claim in Count I pending decision on the state law claims by the Missouri courts.

**I. Background**

On September 26, 2016, the St. Charles County Council passed Bill No. 4381, establishing the St. Charles County Narcotics Control Act. The bill is codified at Chapter 280.010–280.110 of the St. Charles County Code. The main provision of the Act is the "Establishment of a monitoring program" by the St. Charles County Department of Public Health (hereinafter "the County Health Department"). See Bill No. 4381, Section 3.

Section 3(2) of the Act requires that within seven (7) business days of having dispensed a Schedule II, III, or IV controlled substance,[1] a dispenser shall electronically submit the following to the County Health Department:

(1) The pharmacy's Drug Enforcement (DEA) number;

(2) The date of dispensation;

(3) If dispensed via prescription, (a) the prescription number or other unique identifier; (b) whether the prescription is new or a re-fill; and (c) the prescriber's DEA or National Provider Identifier (NPI) number:

(4) The National Drug Code (NDC) of the drug dispensed;

(5) The patient's name, address and date of birth; and

---

[1] The Act defines a "Schedule II, III or IV controlled substance" as a "controlled substance listed in Schedules II, III or IV as set out in Chapter 195 RSMo. or the Controlled Substances Act, 21 U.S.C. Section 812." Bill No. 4381, Section 2(6).

(6) An identifier for the patient to whom the drug was dispensed, including but not limited to any one of the following: (a) driver's license number; (b) the patient's government-issued identification number; or (c) the patient's insurance cardholder identification number.

(The information listed n paragraphs (1)-(6) above will be referred to collectively as "dispensing information".)

Section 6 of the Act requires the Director of the County Health Department (hereinafter "the Director") to "review" the information transmitted. If the Director develops a "reasonable belief that a breach of professional standards has occurred" the Director shall notify the appropriate law enforcement agency, or licensing, certification, or regulatory agency, and is permitted to provide "any dispensing information requested [by such agencies] when advised that such information is required for conduct of an official investigation."

Section 7 of the Act authorizes dispensing information to be provided to the following persons or entities "upon a duly made request":

(a) Persons who are authorized to prescribe or dispense controlled substances, when the request is made for the purpose of providing medical or pharmaceutical care to a patient under the requesting person's care;

(b) The State Board of Pharmacy;

(c) Any state board charged with regulating a professional authorized to prescribe or dispense controlled substances … in the course of a current and open investigation into the acts of a professional under its jurisdiction;

(d) Local, state, and federal law enforcement or prosecutorial officials … who are engaged in the administration, investigation [or] enforcement of laws governing prescription drugs based on a specific case and under a subpoena issued pursuant to court order;

3

(e) Local or state departments of public health who have adopted narcotic monitoring programs that contain substantially the same elements and requirements as the Act;

(f) The MO HealthNet division of the Missouri Department of Social Services regarding MO HealthNet program recipients; or

(g) A judge or other judicial officer under a subpoena issued pursuant to a court order.

Section 7(2) of the Act allows the Director to provide certain dispensing information to public or private entities for statistical or educational purposes. Section 11 of the Act allows the St. Charles County Executive to enter into an intergovernmental agreement with St. Louis County and other political subdivisions for prescription drug monitoring.

Because of the sensitive nature of the information collected and transmitted under Section 3(2), the Ordinance contains certain privacy protections, such as shielding the information from disclosure under Missouri Open Records laws. Plaintiffs allege that many of Schedule II, III, or IV controlled substances are associated with the conditions they treat and can reveal the diagnoses of individuals to whom they are prescribed. Plaintiffs allege that the prescription drug monitoring program established by the Act became operational in April 2017.

Following removal, plaintiffs filed a First Amended Complaint for Declaratory Judgment and Permanent Injunction (the "complaint"). Plaintiff United for Missouri is a Missouri not-for-profit corporation "committed to education and mobilizing citizens about the impact of limited government and economic policy on the state and the impact of the federal government exceeding its Constitutional limits on achieving growth, opportunity and prosperity." Complaint at 1. United for Missouri alleges that it has individual members who are St. Charles County residents, citizens, taxpayers, and voters. Id. at 2. Plaintiff Carl Bearden alleges he is a taxpayer of St. Charles County.

Id. Plaintiffs Dan Rakers and John Doe allege they are residents, citizens, taxpayers, and registered voters of St. Charles County. Id. at 3.

Plaintiff Doe alleges that he suffers from attention deficit disorder for which he is prescribed Adderal, a Schedule II prescription drug, and that his personal information is recorded and maintained through the monitoring program established by the Act. Plaintiff Doe alleges that information about his prescription drugs, medical condition, and physical and mental health should remain between him and his health care providers, and asserts he has a reasonable expectation of privacy that such information will not be shared with the government or with law enforcement as a matter of course. Plaintiff Doe alleges he is distressed and his privacy expectations are violated by the Act because the Director of the County Health Department can obtain his prescription records without a warrant and can provide those records to others, including law enforcement personnel, without a warrant.

In Count I, plaintiffs assert that the Act violates the Fourth Amendment to the United States Constitution because it authorizes a search of prescription dispensing information without the owner's consent or without a warrant as required by Section 195.375, Missouri Revised Statutes. In Count II, plaintiffs assert that for the same reason, the Act violates Article I, Section 15 of the Missouri Constitution, which was amended in 2014 to expressly include electronic communications and data.

In Count III, plaintiffs assert that the Act violates and is preempted by Section 195.375, Mo. Rev. Stat., which only allows a municipal officer whose duty it is to enforce the laws of Missouri relating to narcotic drugs to divulge prescriptions, orders, and records if there is an active prosecution or licensing case. Plaintiffs contend that the Act contravenes state law because it allows the Director, a municipal officer who is not charged with the duty to enforce the laws relating to

narcotic drugs, to divulge prescription information to numerous persons and entities in the absence of any active prosecution or licensing case, and without a requirement of probable cause or the issuance of a warrant. Plaintiffs also assert that the Act violates Missouri constitutional law because a county ordinance cannot invade the province of general legislation involving the public policy of the state as a whole, and Section 195.375, a part of Missouri's "Comprehensive Drug Control Act," makes clear that regulation of prescription drug information is a matter of statewide concern.

## II. Discussion

Plaintiffs ask the Court to abstain from exercising supplemental jurisdiction over the Missouri state law claims in Counts II and III pursuant to Pullman abstention; to remand Counts II and III for resolution by the state court; and to stay proceedings on the Fourth Amendment claim in Count I pending a final judgment from Missouri's courts on the state law claims. Plaintiffs contend that Pullman abstention is appropriate because controlling state law is unclear, their interpretation of the controlling state law is tenable, and if that interpretation is adopted by the state court it would be unnecessary to reach the federal constitutional question.

"As a general rule, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction in proper cases. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)." Beavers v. Arkansas State Bd. of Dental Examiners, 151 F.3d 838, 840 (8th Cir. 1998). "This obligation notwithstanding, federal courts may abstain from deciding an issue in order to preserve 'traditional principles of equity, comity, and federalism.' The Pullman abstention doctrine is one of several limited doctrines that permit district courts to preserve such principles." Id. at 840-41 (internal citation and footnote omitted). "The Pullman abstention doctrine counsels restraint in the use of federal judicial resources under certain circumstances." Robinson v. City of Omaha, Neb., 866 F.2d 1042, 1043 (8th Cir. 1989). "Pullman requires a federal court to refrain from

6

exercising jurisdiction when the case involves a potentially controlling issue of state law that is unclear, and the decision of this issue by the state courts could avoid or materially alter the need for a decision on federal constitutional grounds." Id. (quoting Moe v. Brookings County, S.D., 659 F.2d 880, 883 (8th Cir. 1981)). The Eighth Circuit stated that "the Supreme Court defined the proper context for Pullman abstention" as follows:

> The paradigm case for abstention arises when the challenged state statute is susceptible of "a construction by the state courts that would avoid or modify the [federal] constitutional question." . . . More fully, we have explained: "Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication . . . . The doctrine . . . contemplates that deference to state court adjudication only be made where the issue of state law is uncertain." Harman v. Forssenius, 380 U.S. 528, 534 (1965).

Beavers, 151 F.3d at 841 (quoting Lake Carriers' Association v. MacMullan, 406 U.S. 498, 510-11 (1972)).

Having considered the relevant factors, the Court concludes Pullman abstention is required in this case. Count III seeks a declaration that the Act violates Section 195.375, Mo. Rev. Stat., and is preempted by the statute. This is a potentially controlling issue of state law. Plaintiffs assert that the Act conflicts with and is preempted by Section 195.375, either because the Act permits actions the statute prohibits (conflict preemption), or because the Missouri General Assembly has created a state regulatory scheme that is so comprehensive it can be inferred the General Assembly intended to occupy the legislative field (field preemption), citing Cooperative Home Care, Inc. v. City of St. Louis, 514 S.W.3d 571, 579 (Mo. 2017) (en banc) (discussing types of implied preemption under Missouri law).

7

Plaintiffs contend the statute's language that "prescriptions, orders, and records . . . shall be open for inspection only" to specified officers whose duty it to enforce the laws of the state or of the United States relating to narcotic drugs, excludes inspection or review by any officer whose duties are not to enforce state or federal laws relating to narcotic drugs, as the Act provides. Plaintiffs also contend the Act conflicts with Section 195.375 because it permits the Director to divulge dispensing information outside of a "prosecution or proceeding in court or before a licensing or registration board or officer," § 195.375.5, Mo. Rev. Stat., and does not comport with the statute's warrant requirement, § 195.375.1, Mo. Rev. Stat. Finally, plaintiffs contend the Missouri legislature has expressed an intent to occupy the field of prescription drug control, to the exclusion of county regulation, by enacting a "comprehensive" drug control act.

The Court finds the language of Section 195.375 conceivably supports plaintiffs' argument that the Act conflicts with the statute because the Act permits actions the statute prohibits. On its face, Section 195.375 appears to restrict the dissemination of prescription drug records in the manner asserted by plaintiffs. Plaintiffs' interpretation of the statute is therefore plausible.

The Court also finds that the controlling state law is unclear. Both the application of Section 195.375 and its relation to the Act are unclear; there does not appear to be any Missouri precedent addressing Section 195.375 or a potential conflict between the statute and any local ordinance. The parties offer competing interpretations of Section 195.375; in contrast to plaintiffs' argument, defendants contend the Act requires a dispenser of controlled substances to submit an entirely new electronic record of dispensing information of a kind that is not referred to in Section 195.375. Defendants argue that as a result, Section 195.375 has no application to and does not conflict with the Act, which defendants assert targets a matter of purely local concern.

Under Missouri law "local legislation cannot create an inconsistent or irreconcilable conflict with state law." Cooperative Home Care, 514 S.W.3d at 579 (citing Missouri Bankers Ass'n, Inc. v. St. Louis Cnty., 448 S.W.3d 267, 272 (Mo. 2014) (en banc)). If the Missouri Supreme Court "finds such a conflict exists, state statutes preempt the local ordinances." Id. Here, if the Missouri courts were to agree with plaintiffs' interpretation of Section 195.375 and conclude that the Act conflicts with the statute, the Act's provisions must be overridden. Such a decision by the state courts would afford plaintiffs all of the relief they seek and render unnecessary any decision on the federal constitutional grounds.

In Robinson, the Eighth Circuit addressed a situation analogous to the present case. A provision of the Omaha city charter required Robinson, a city employee, to either resign his job or take a leave of absence because he filed for candidacy for a non-partisan position on the board of directors of an Omaha public utility. 866 F.2d at 1042. Robinson filed suit alleging that the city charter provision and the municipal code violated his federal constitutional rights. He also alleged that the city laws violated a Nebraska statute. Id. at 1042-43. The district court ruled in favor of the City, finding there was no constitutional violation but not addressing the state law issue. Id. at 1043. The Eighth Circuit reversed, holding sua sponte that the Pullman abstention doctrine applied.

The Eighth Circuit found the Nebraska statute's application was unclear, and stated that if the statute was found to be inconsistent with the city charter and ordinance provisions, the city's provisions would be overridden by the state law. Id. at 1044. Under those circumstances, the Eighth Circuit determined "the more reasonable course for federal courts to pursue would be to abstain, allowing Nebraska's courts to construe [the state statute], and to determine whether the state statute and the laws of the City of Omaha are in conflict." Id. at 1045. Finding Robinson's interpretation of the Nebraska law plausible, the Eighth Circuit concluded it was "entirely possible" the Nebraska

9

courts would decide the statute prohibited Omaha from preventing his candidacy and, if so, the state court's interpretation of the statute would obviate the federal constitutional issue. Id.

Here, Section 195.375's application is unclear and plaintiffs offer a plausible interpretation of the statute. If the state courts agree with plaintiffs' interpretation, that decision would be dispositive of the case and would avoid the federal constitutional question entirely. The Court concludes under these circumstances that it is required to decline to exercise supplemental jurisdiction over the state law claims in Counts II and III under Pullman. Other relevant considerations, see Harman, 380 U.S. at 534, support this conclusion. Because this action was originally filed in state court and removed, there are available state remedies as plaintiffs may seek declaratory and injunctive relief on their state law claims in the Missouri state courts following remand. There is no indication abstention would have any negative effect on the rights being asserted, such as delay, and plaintiffs are the parties seeking abstention and remand. As resolution of the federal constitutional question in this case "may be materially altered by the determination of an uncertain issue of state law, abstention [is] proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication[.]" Beavers, 151 F.3d at 841. The interpretation of Section 195.375 is a matter involving important state interests in Missouri's regulation of prescription drugs, and abstention will avoid federal interference with Missouri's interpretation of its own laws.

## III. Conclusion

For the foregoing reasons, the Court concludes this case involves an unclear issue of state law that is potentially controlling, and decision of the issue by the state courts would likely avoid any need for a decision on the federal constitutional question asserted. As a result, the Court will

grant plaintiffs' motion to abstain from exercising supplemental jurisdiction over the state law claims in Counts II and III under the Pullman abstention doctrine, and will remand those claims for decision by the state court. See Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1501 (8th Cir. 1992) (district court has authority to remand matters to state court based on abstention).

The Court will stay the federal constitutional claim in Count I and administratively close this case. When the state law issues have been resolved, plaintiffs may return to federal court and pursue the Fourth Amendment claim if it has not become moot. See Doe v. McCulloch, 835 F.2d 785, 788-89 (8th Cir. 2016).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion to Remand Counts II and III and Stay Count I of the First Amended Complaint is **GRANTED** as follows: The Court declines to exercise supplemental jurisdiction over the state law claims in Counts II and III pursuant to the abstention doctrine established in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), and will remand those claims to state court for decision. The Court will stay its proceedings on plaintiffs' federal constitutional claim in Count I pending decision on the state law claims by the Missouri courts. [Doc. 17]

**IT IS FURTHER ORDERED** that plaintiff John Doe's motion for leave to proceed under a pseudonym is **DENIED** without prejudice. [Doc. 14]

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **administratively close** this case, which may be reopened on the motion of any party. Any motion to reopen shall include a statement of all relevant proceedings that have occurred in state court on Counts II and III.

An order of partial remand will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  5th  day of December, 2017.